UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ZANKER GROUP LLC,<br>    Plaintiff,<br><br>v.<br><br>MINTZ, LEVIN, COHN, FERRIS,<br>GLOVSKY and POPEO, PROFESSIONAL<br>CORPORATION and SCOTT MEZA,<br>    Defendants. | CIVIL ACTION NO.<br>3:05cv1945 (SRU) |

## RULING

This action is related to a previous action, filed and decided in state court, between plaintiff Zanker Group LLC ("Zanker") and several businesses that defendant Scott Meza and his law firm represented in an allegedly improper transaction. *See Zanker Group, LLC v. Summerville at Litchfield Hills, LLC*, 2007 Conn. Super. LEXIS 635 (Conn. Super. Ct. 2007) ("*Zanker I*"). The state court held that many of Zanker's claims against the businesses were time-barred. For reasons set forth in the state court decision, and for further reasons set forth below, *Zanker I* has preclusive effect.

## I. Background

Most of the relevant facts are set forth in Judge Lynda B. Munro's opinion in *Zanker I*, with which I assume familiarity. A brief recitation of certain relevant facts is set forth below.

### The Transaction

This case involves a corporate acquisition involving several different parties, some of which overlap. Zanker, a company designed to develop and market assisted living facilities, is wholly owned by two individuals, Ellen Sirkin-Zanker and Theodore Zanker. Summerville Senior Living ("SSL") is also a corporation that develops assisted living facilities.

On April 30, 1998, Zanker and SSL entered into an agreement to develop an assisted living facility in South Windsor, CT called "Summerville at South Windsor, LLC" ("South Windsor"). Under the agreement, Zanker owned 25 percent of South Windsor and SSL owned 75 percent. SSL appointed two managers for South Windsor and Zanker appointed one. SSL arranged for its attorney, defendant Scott Meza, to represent South Windsor. Meza is an attorney in the defendant law firm, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC. ("Mintz Levin"). Zanker was represented at all times by Marc Wallman of Brenner, Saltzman & Wallman, P.C.

SSL arranged financing for the South Windsor project through a sale/leaseback transaction with Health Care REIT ("HCR"). The lease had an initial term of 13 years with an option for an additional 10-year term. The lease also included a buy-back option, which granted to South Windsor the right to purchase the real property associated with the South Windsor assisted living facility. South Windsor could exercise the option no earlier than 180 days and no later than 90 days prior to the expiration date of the initial 13-year lease term. Construction was completed on the South Windsor facility, and it opened for business on June 29, 1999.

Despite the terms of the lease, in December 1999, SSL began the process of acquiring the South Windsor facility, along with several other health care facilities, from HCR. As part of the transaction to acquire South Windsor, SSL negotiated an amendment to the original lease. The new agreement provided a special, presently-exercisable option. SSL did not initially give any notice to Zanker about the agreement between HCR and SSL.

On April 13, 2000, SSL applied to Heller Financial, Inc. ("Heller") for a mortgage loan to finance the proposed acquisition of South Windsor and another property. Meza prepared an opinion letter to assist SSL in obtaining financing from Heller ("opinion letter"). The opinion

letter indicated that "[t]he execution and delivery by [South Windsor], and the performance of [South Windsor's] obligations under each of the Loan Documents, have been duly authorized by all necessary limited liability company action on the part of [South Windsor]." Zanker's Rule 56(a)(2) Statement, ex. B at 5. The letter also stated that "[t]his letter is furnished by us solely for the benefit of Lender, its respective successors, participants and assigns and their counsel in connection with the transactions referred to in the Loan Documents and may not be circulated, [sic] to, or relied upon by, any other persons or entities." *Id*. at 8. Zanker asserts that the letter is false, and that the contract was not authorized by the necessary limited liability company action.

Also in aid of the transaction, Mintz Levin created a document entitled "Summerville at South Windsor, L.L.C. Unanimous Written Consent of Managers Without a Meeting." ("consent document"). Zanker's Rule 56(a)(2) Statement, ex. A. That document provides that "[t]he undersigned, being all of the managers of [South Windsor] hereby consent to the following action which action shall be taken in lieu of a special meeting of the Managers of the Company. Whereas, the Company has determined that it is in the best interest of the Company, in connection with its continuing operation of the assisted living facility located in South Windsor Connecticut to enter into a loan . . . to be made by Heller Healthcare Finance, Inc. to [South Windsor]." The consent document, however, contained signatures of only two of the three managers – Zanker did not sign the document.

On May 5, 2000, an SSL employee wrote to Zanker that HCR "is in the process of assigning their interest in the real estate to a Summerville subsidiary (SWSLP)." On May 10, Zanker received, by fax, an update that the closing on the purchase of South Windsor would occur May 15. Zanker responded to that fax with several questions: "Which affiliate is involved?

What are the terms of the proposed assignment? What entity will be cross-defaulted with ours? What loans are we currently cross-defaulted with? Who owns the affiliate that will purchase the real estate contract and what is it's structure, relationship to Summerville? How was this new contract negotiated?" *Zanker I*, 2007 Conn. Super. LEXIS 635 at *17-18.

Ultimately, SSL, through its affiliate, purchased South Windsor using the presently-exercisable option, and Zanker subsequently sued SSL.

The State Court Ruling

Zanker asserted numerous claims against SSL in state court arising from the purchase, including the same causes of action it alleges here against Meza (fraudulent concealment, *Zanker I*, 2007 Conn. Super. LEXIS 635 at *41, breach of fiduciary duty, *id*. at *43, and tortious interference with beneficial interest, *id*. at *51). For reasons set forth in greater detail in *Zanker I*, the state court held that those particular claims were time-barred.[1]

Zanker had sought to overcome SSL's statute of limitations defense by arguing that SSL had fraudulently concealed its cause of action, and that it had no knowledge of the allegedly fraudulent acts that gave rise to the transaction. The state court rejected Zanker's argument, holding that Zanker's assertion that it had no knowledge of the transaction was not "credible" or "believable." *Id*. at *18. The Court continued that Zanker had an "understanding of the basic nature of the matter: a refinance would be taking place and title to the real estate was being conveyed to a Summerville affiliate. After observing Dr. Zanker and listening to his testimony, the court does not find it believable that he did not have, at least, that basic understanding of the

---

[1] The statute of limitations for those claims was three years. It is unclear, from the state court decision, when Zanker filed suit against SSL, but it was before the present action was filed.

transaction by May 10." *Zanker I*, 2007 Conn. Super. LEXIS 635 at *18. The Court later reasoned that it "did not find Dr. Zanker credible when he continually protested that they (the Zanker Group) did not understand the transaction. In his testimony he was inconsistent, one minute acknowledging they were told title to the real estate was being conveyed, and the next minute stating that he did not understand what he was being told in the memoranda from Summerville's representatives." *Id*. at *57.

The state court also found that there was no evidence that SSL attempted to conceal the documents from Zanker in order to hide the transaction:

> given [Zanker's] sophistication . . ., the court finds that the defendant Summerville discharged its duty to disclose the material facts of the transaction. The plaintiff has failed to prove by clear and unequivocal evidence that the defendants concealed the pithy components of the May 2000 transaction. Further, the plaintiff failed to prove that the nondisclosure by the defendant of the effect of the transaction on the South Windsor option was intentional. Similarly, . . . the plaintiff has not met its heightened standard of proving that the nondisclosure of this was done to obtain the plaintiff's delay in filing its cause of action. Accordingly the plaintiff has failed to prove fraudulent concealment . . . .

*Id*. at *60. The Court concluded that, because Zanker knew about the transaction and because there was no fraudulent concealment, Zanker's action was time-barred.

Zanker's Claims in This Case

In this case, Zanker brings three claims against Meza and his law firm. In count one, Zanker alleges, essentially, that Meza breached his fiduciary duty to Zanker, a minority shareholder in the company, by drafting the consent document and the opinion letter to facilitate the improper sale transaction between SSL and Heller.[2] In count two, Zanker alleges that Meza

---

[2] Zanker alleged other theories for its breach of fiduciary duty claim, however, it acknowledges that those theories did not survive the state court ruling.

fraudulently concealed the facts connected with the 2000 transactions. In count three, Zanker alleges that Meza tortiously interfered with Zanker's beneficial interest by facilitating the sale transaction. Zanker conceded at oral argument that count two is not a separate cause of action, but rather, a claim seeking to toll the statute of limitations. Zanker also conceded that, in light of the state court's ruling, its tortious interference claim in count three is time-barred.

**II.   Standard of Review**

Summary judgment is appropriate when the evidence demonstrates that "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, the court must construe the evidence in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992).

**III.   Discussion**

<u>Collateral Estoppel</u>

The central issue presented for review is whether the doctrine of collateral estoppel compels a conclusion that Zanker's claims are time-barred. Collateral estoppel, or issue preclusion, bars "a party from relitigating an issue that has been determined in a prior suit." *Dowling v. Finley Assocs.*, 248 Conn. 364, 373 (1999) (quoting *Virgo v. Lyons*, 209 Conn. 497,

501 (1988)). Collateral estoppel protects "the finality of judicial determinations, conserve[s] the time of the court, and prevent[s] wasteful relitigation, and expresses no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." *Id.* (internal quotations and citations omitted). "For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." *Virgo v. Lyons*, 209 Conn. 497, 501 (1988).

The following elements must be satisfied for a claim to be barred under the doctrine of collateral estoppel: (1) the issues in both proceedings are identical; (2) the issues in the prior proceeding were actually litigated and decided; (3) the issue previously litigated was necessary to support a valid and final judgment on the merits; and (4) there was a full and fair opportunity to litigate the issue in the prior proceeding. *Yale-New Haven Hosp., Inc. v. Thompson*, 162 F. Supp. 2d 54, 64 (D. Conn. 2001).

In this case, Zanker argues that the defendants have failed to establish the first element, that is, that the issue presented and decided in the first proceeding was identical to the issue presented here. "Before collateral estoppel applies there must be an identity of issues between the prior and subsequent proceedings. To invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." *Crochiere v. Board of Education*, 227 Conn. 333, 345 (1993). *See Corcoran v. Dep't of Soc. Servs.*, 271 Conn. 679, 690 (2004) (internal quotations omitted). "[C]ollateral estoppel has no application in the absence of an identical issue." *Gladysz v. Planning & Zoning Commission*, 256 Conn. 249, 261 (2001).

All of Zanker's claims against Meza, SSL's attorney, rest on its assertion that the sale transaction between SSL and Heller was unauthorized. The state court held, however, that the transaction was authorized, that Zanker was aware of the sale transaction, and that its claims regarding the sale transaction were time-barred. Zanker was also aware that Meza represented South Windsor and SSL, and that Meza facilitated the allegedly improper sale transaction. *See Zanker I*, 2007 Conn. Super. LEXIS 635 at *30-31. The allegedly fraudulent documents used by Meza are, at best, additional evidence of the manner in which the claimed wrongdoing was accomplished; they do not provide an independent basis for a breach of fiduciary or fraud claim[3] themselves. The statute of limitations is not tolled until a plaintiff discovers *all* evidence supportive of a claim; nor is the state court finding against Zanker undermined by the later discovery of additional evidence arguably relevant to that finding. The state court's ruling has preclusive effect, and Zanker's claims are time-barred.[4]

Fraudulent Concealment

Zanker also asserts that the statute of limitations for its claims against Meza should be tolled because Meza fraudulently concealed the allegedly improper opinion letter and consent documents. That argument is without merit. Zanker has not presented any evidence to support its theory that Meza fraudulently, or intentionally, concealed those documents. Moreover,

---

[3] Zanker certainly was not defrauded by documents it only obtained from a third-party after the transaction was consummated.

[4] Zanker asserts that the allegedly fraudulent opinion letter and consent document give rise to a cause of action for breach of fiduciary duty separate and distinct from its cause of action against SSL. That argument is without merit, however, because it rests on the premise that the sale itself was improper – an argument already litigated and decided in state court. If Zanker had no claim that the underlying transaction itself was improper, surely it could have no claim that the manner in which the transaction was conducted was improper.

Zanker has not provided any support for the proposition that Meza, as South Windsor's corporate counsel, owed any duty to disclose those documents to Zanker. Finally, Zanker's assertion that Meza fraudulently concealed the documents is belied by *Zanker I*.[5]

Fiduciary Duty of a Corporate Counsel to the Corporation's Minority Shareholders

Finally, more fundamentally, Meza did not owe a fiduciary duty to Zanker in this case. Under Connecticut law, attorneys occasionally owe a duty of care to persons other than their clients:

> Determining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy. In addressing this issue, courts have looked principally to whether the primary or direct purpose of the transaction was to benefit the third party. Additional factors considered have included the foreseeability of harm, the proximity of the injury to the conduct complained of, the policy of preventing future harm and the burden on the legal profession that would result from the imposition of liability. Courts have refrained from imposing liability when such liability had the potential of interfering with the ethical obligations owed by an attorney to his or her client. *See, e.g.*, *Parnell v. Smart*, 66 Cal. App. 3d 833, 837-38 (1977) (in adversary proceedings, attorney for insurance carrier owed no duty to insured); *Pelham v. Griesheimer*, 92 Ill. 2d 13, 22-23 (1982) (attorney representing parent in custody dispute owed no duty to child); *Clagett v. Dacy*, 47 Md. App. 23, 29-30, 420 A.2d 1285 (1980) (attorneys conducting

---

[5] The *Zanker I* Court held:

> given [Zanker's] sophistication . . ., the court finds that the defendant Summerville discharged its duty to disclose the material facts of the transaction. The plaintiff has failed to prove by clear and unequivocal evidence that the defendants concealed the pithy components of the May 2000 transaction. Further, the plaintiff failed to prove that the nondisclosure by the defendant of the effect of the transaction on the South Windsor option was intentional. Similarly, . . . the plaintiff has not met its heightened standard of proving that the nondisclosure of this was done to obtain the plaintiff's delay in filing its cause of action. Accordingly the plaintiff has failed to prove fraudulent concealment . . . .

*Id*. at *60.

foreclosure sale owed no duty to highest bidders).

*Krawczyk v. Stingle*, 208 Conn. 239, 245-46 (1988).

In *Gould v. Mellick & Sexton*, 263 Conn. 140 (2003), the Supreme Court of Connecticut considered a similar situation. In that case, the plaintiffs, several investors in a limited partnership, had made several claims against the defendant, a law firm that acted as corporate counsel for the partnership. Plaintiffs had alleged that the defendant committed negligence with respect to the sale of certain limited partnership interests. In affirming the dismissal of plaintiffs' negligence claim, the Supreme Court held that the defendant acted as legal counsel only to the partnership, and not to the investors. "It is clear that the partnership retained the defendant to further its own interests, and not those of the plaintiffs and other investors, with whom it engaged in an arm's-length transaction. The imposition of a concomitant duty to protect the plaintiffs' interests would interfere with the defendant's duty of undivided loyalty to its client." *Id*. at 155. The Supreme Court concluded that, "[u]nder these circumstances, the defendant did not owe a duty of care to the plaintiffs." *Id*.

Similarly, Meza represented South Windsor, not Zanker. As such, Meza owed a fiduciary duty to South Windsor, not to Zanker. To impose a fiduciary duty on Meza in this case would be to impose "liability when such liability ha[s] the potential of interfering with the ethical obligations owed by an attorney to his or her client." *Krawczyk*, 208 Conn. 246.

**IV.   Conclusion**

Pursuant to the doctrine of collateral estoppel, Zanker's claims are time-barred. Even if Zanker was not collaterally estopped, its tolling argument is without merit because it has presented no evidence to suggest that Meza fraudulently concealed the consent form and opinion

letter, nor that Meza had an affirmative duty to disclose those documents.

As such, defendants' motion for summary judgment **(doc. #33)** is GRANTED.  Judgment shall enter for the defendants on all claims.  The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 11th day of July 2008.

                                                /s/ Stefan R. Underhill
                                                    Stefan R. Underhill
                                                    United States District Judge